SAUNDERS, Judge,
concurring.
hi concur with the result of the majority opinion. However, I do not agree with the majority opinion wherein it finds that “the [BTA’s] findings of fact, that [the] Vivianos were domiciled in and were residents of Louisiana, were supported by the evidence.”
Louisiana Revised Statutes 47:31(1) states:
There shall be levied, collected, and paid for each taxable year a tax upon the net income of residents and nonresidents, estates, trusts and corporations, as hereinafter provided.
(1) Resident individuals. Every person residing within the state, or the personal representative in the event of death, shall pay a tax on net income from whatever source derived, except as hereinafter exempted.
Every natural person domiciled in the state, and every other natural person who maintains a permanent place of abode within the state or who spends in the aggregate more than six months of the taxable year within the state, shall be deemed to be a resident of this state for the purpose of determining liability for income taxes under this Chapter.
The trial court, in its reasons for judgment, correctly points out that there are three classes of persons that are deemed a resident of Louisiana so as to be subjected to a tax on the income from whatever source derived. They are:
|¾1. Any natural person that is domiciled in the State of Louisiana, or
2. Any natural person who maintains a permanent place of abode within the State of Louisiana, or
3. Any natural person who spends in the aggregate more than six months of the taxable year within the State of Louisiana.
Further, the trial court correctly interpreted the statute in stating, “it is not necessary for a natural person to meet all of the previously mentioned classes, but rather, as long as a natural person falls into one of the three classes listed above[,] said person shall be considered to be a resident individual of the State of Louisiana.” As the trial court once again correctly points out, if one does fall into one of the three categories, he or she “shall be subjected to [Louisiana’s] tax laws.”
The majority opines that the BTA’s finding of fact that the Vivianos were domiciled in the State of Louisiana was supported by the evidence in the record. I disagree.
*1012 Louisiana Civil Code Article 38 states, “[t]he domicile of a natural person is the place of his habitual residence.” Louisiana Civil Code Article 39 (emphasis added) states, “[a] natural person may reside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one’s domicile at the option of persons whose interests are affected.” Our Louisiana Supreme Court, in Russell v. Goldsby, 00-2595, p. 5 (La.9/22/00), 780 So.2d 1048, 1051, stated the following:
it is well settled that residence and domicile are not synonymous, and a person can have several residences, but only one domicile. La. Civ.Code art. 38; Messer [v. London, 438 So.2d 546 (La.1983) ]; Autin v. Terrebonne, 612 So.2d 107 (La.App. 1st Cir.1992). A person’s domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain. The question of domicile is one of intention as well as fact, and where it appears domicile has been acquired in another place, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed by | »positive and satisfactory proof of establishment of a domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. Pattan v. Fields, 95-1936 (La.App. 1st Cir.1995), 669 So.2d 1233. Absent declaration to change domicile, proof of this intention depends upon circumstances; there is a presumption against change of domicile. Messer, 438 So.2d at 547; Herpin v. Boudreaux, 98-306 (La.App. 3d Cir.3/5/98), 709 So.2d 269, writ denied, 98-0578 (La.3/11/98), 712 So.2d 859.
I feel that the evidence in the record is such that the Vivianos overcame the legal presumption that they did not intend to change their domicile from Louisiana. I feel that the trial court’s reasons for judgment on this issue are correct. There, he analyzes this issue quite thoroughly in stating:
The facts and record establish that the [Vivianos’] domicile [ ] changed when they acquired a residence in Florida along with the intent to remain there indefinitely. The [Vivianos’] acquired a residence, consisting of physical presence, in Florida when they purchased a condominium at Sandestin Resort in Destín. The final analysis is whether [the Vivianos] had the intent to remain in Florida. This court recognizes that purchasing a home and supplying it with the common utilities that homes have, such as electricity and water, it not in and of itself enough to prove intent to remain in any particular state. However, this evidence!,] in combination with the fact that the couple registered to vote in Florida, discontinued to voting in Louisiana, opened a post office box and a checking account in Florida, paid Florida property taxes, started a new business in Florida, and filed Florida intangible personal property tax returns required of Florida residents during the taxable periods at issue[,] is sufficient to prove that the [Vivianos] did establish intent to remain in Florida and to make Florida their domicile.
To me, the question of whether the Vivi-anos are natural people who maintain a permanent place of abode within the State of Louisiana, the second classification, is less clear. However, I would note that the trial court gave due consideration to the issue, and I would agree with his result. His analysis follows:
[The Vivianos] argue that they did not have the intent to remain in Louisiana *1013 even though they kept a house located in Opelousas, Louisiana. This is evidenced by two facts. First, upon moving to Florida, [their] oldest son, Charlie, a major, lived in the house while he was employed by [them]. Next, Mr. Vivi-ano’s mother’s health was deteriorating; therefore, they made the decision to keep the house. They enrolled their son in school in Louisiana due to the proximity to Mr. Viviano’s mother due to her failing health and state of depression. |4Mrs. Viviano did spend time in Louisiana; however, [the Vivianos’] arguments[,] as discussed in proving their domicile had changed from Louisiana to Florida[,] are also relevant in the determination whether [ ] Louisiana constituted [their] permanent place of abode during the applicable tax periods.
[[Image here]]
Although Louisiana bears no statute explaining or defining the phrase “permanent place of abode,” the Louisiana Supreme Court has held that “[residence and place of abode are synonymous.” Taylor v. State Farm Mut. Auto Ins. Co. [248 La. 246, 178 So.2d 238], (La.1965). Additionally, Black’s Law Dictionary defines “permanent abode” as “the place at which a person is physically present and that the person regards as home; a person’s true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.”
This court acknowledges that [the Vi-vianos,] in this case, did in fact have a physical residence in the state of Louisiana in that they owned a house in Opel-ousas, Louisiana. However, it is this court’s opinion that the term “permanent place of abode,” a term of art, implies something more than merely owning a house and living in the state on a temporary basis. Read literally, the term implies that there must be some permanence attached to the residence. Nothing in the record suggests a high enough degree of permanence to the residence in Louisiana in order to reach the conclusion that Louisiana is [the Vi-vianos] permanent place of abode. According to the testimony of [the Vivia-nos], Mrs. Viviano and her son were in Louisiana due to the illness of Mr. Vivi-ano’s mother and because Mrs. Viviano had to be close to her mother-in-law, they decided to enroll their child in a Louisiana school. Based upon the record, it is clear that Mrs. Viviano did not intend to permanently reside in Louisiana.
This court, in determining whether Louisiana was [the Vivianos] permanent place of abode during the Taxable Years, also takes into consideration the purpose for which [the Vivianos] moved to Florida. According to the record, Mr. Vivi-ano was in the business of plasma fore-sis, a process used to obtain plasma from various donors. One of Mr. Vivi-ano’s companies, Louisiana Biologicals[,] obtained a contract with the State of Louisiana Department of Corrections in 1981 to operate a plasma foresis program in each of the five prison facilities and then later obtained separate contracts for each of the facilities. Mr. Viviano testified that a negative perception grew towards plasma obtained from prison inmates when AIDS and questions of the reasons behind its transmission arose to the forefront of concern. It is Mr. Viviano’s testimony that he learned people became concerned that plasma coming from Louisiana was prison plasma. In his attempt to divert the attention from Louisiana, [the Vivianos] decided to move to Florida and establish another company, CBC International. CBC International bought the plasma *1014 from the | ¡-(Louisiana companies as well as other companies around the world and then proceeded to resell the plasma. According to Mr. Viviano’s testimony, moving to Florida was not only for business reasons, but Florida was chosen among all other states due to personal reasons. Mr. Viviano’s best friend also lived in Florida which contributed heavily to their decision.
Taking into consideration the fact presented above as well as the purpose and reasons for moving to Florida set forth by [the Vivianos], this court concludes that Louisiana was not [the Vivianos’] permanent place of abode.
I would note that another of the personal reasons of Mr. Viviano is likely that Florida currently has no personal income tax and has a corporate income tax of five (5%) percent. However, this fact would also seemingly weigh in favor of finding that the Vivianos intended to change their domicile as well as their permanent place of abode to Florida.
Where I disagree with the trial court, which ultimately results in my concurrence with the result reached by the majority, is in regards to the third classification. I agree with the majority that the BTA was not manifestly erroneous in finding that the Vivianos were natural persons who spent in the aggregate more than six months of taxable year within the State of Louisiana.
The trial court, in his analysis, on the third classification, correctly points out that whether hours, days, or months are to be considered in making a determination on this issue is vague. However, the trial court focused nearly entirely on the time spent in Louisiana by Mr. Viviano.
To me, it is clear from the record that Mrs. Viviano spent at least (75%) of her time in Louisiana given that her son was in school here for nine (9) months in a given year and she was here to tend to the needs of her sick mother-in-law who was apparently sick for the entire twelve (12) months the taxable years at issue. I agree with the trial court that a finding that Mr. Viviano spent more than six (6) months of those taxable years in Louisiana was a very close issue. However, I feel |fithe trial court should have considered the combination of Mr. and Mrs. Viviano’s time here. My reading of the record suggests that the combination clearly exceeds fifty (50%) percent of their time in the taxable years.
Accordingly, as I cited earlier from the trial court’s reasons for judgment, “it is not necessary for a natural person to meet all of the previously mentioned classes, but rather, as long as a natural person falls into one of the three classes listed above[,] said person shall be considered to be a resident individual of the State of Louisiana.” As such, I feel that the BTA was reasonable in finding that the Vivianos spent “in the aggregate more than six months of the taxable year within the State of Louisiana.” Therefore, I agree with the result reached by the majority to reverse the trial court’s judgment.